Barbara Briant King, as administratrix of the estate of her son, Kenneth Halpern, filed an action under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) against S.R. Smith, Inc., and S.R. Smith Company, Inc., as well as other defendants not involved in this appeal. The parties have agreed that for purposes of this appeal the relationship of the companies is not an issue, and we refer to the companies together as "S.R. Smith." Ms. King claimed that S.R. Smith failed to warn of the danger associated with diving from a diving board that it manufactured and sold. The trial court entered a summary judgment for S.R. Smith and, pursuant to Rule 54(b), A.R.Civ.P., made the judgment final.
Ms. King's action was before this Court on an appeal from a summary judgment for another defendant in King v. NationalSpa Pool Institute, Inc., 570 So.2d 612 (Ala. 1990). In that case we stated the facts as follows:
 "In the fall of 1987, Ms. King's intestate purchased a house and a lot in Mobile, Alabama. There was an in-ground, vinyl-lined swimming pool that had been constructed in 1981 by Southern Leisure Pool and Supply Corporation ("Southern Leisure"), a defendant not involved in this appeal. The evidence before the trial court showed that the swimming pool met the . . . 'Suggested Minimum Standards for Residential Swimming Pools' ('standards') [of the National Spa and Pool Institute, which we refer to as 'the trade association'] and was of the size, shape, and dimensions that the trade association prescribed for allowing the type of diving board that had been installed with the pool. In May, 1988, Ms. King's intestate dove into the pool from the diving board. He did not slip, trip, or otherwise go into the pool unintentionally. It can reasonably be inferred that Ms. King's intestate hit his head on the bottom or side of the pool and sustained a broken neck that caused permanent quadriplegia. Approximately eight and one-half months later, he died of pneumonia secondary to quadriplegia."
570 So.2d at 613.
The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
 "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
The burdens placed on the parties by this rule have often been described: *Page 1287 
 "The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving part has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980)."
Schoen v. Gulledge, 481 So.2d 1094, 1096-97
(Ala. 1985).
In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Sandersv. Kirkland Co., 510 So.2d 138 (Ala. 1987).
Ms. King alleges that S.R. Smith failed to warn Mr. Halpern of the dangers associated with diving from its board into the pool. Under the AEMLD, if a manufacturer or seller places goods on the market that are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods can create danger when used in their customary manner, the defendant must exercise reasonable diligence to make such danger known to the persons likely to be injured by the product. Hawkins v. Montgomery IndustriesInternational, Inc., 536 So.2d 922 (Ala. 1988); Gurleyv. American Honda Motor Co., 505 So.2d 358 (Ala. 1988);Cazalas v. Johns-Manville Sales Corp., 435 So.2d 55,58 (Ala. 1983).
S.R. Smith argues that it did "everything within its power to comply with its duty to warn," because, it argues, it places a warning sticker on each diving board sold that reads as follows: "Danger: Control your dive. Serious injury or death can result if head strikes bottom." That warning sticker also suggests how to position one's body during all the phases of a dive to avoid injury.
However, Alvin Shelton, vice-president of S.R. Smith, Inc., testified in deposition that that warning was not placed on any of the defendants' diving boards until 1985, which was after the diving board involved in this action had been manufactured and installed in the swimming pool. Also, according to Shelton, the defendants did not retroactively furnish this warning to persons who had purchased diving boards prior to the time S.R. Smith began using this warning. The evidence further indicates that the closest thing to a warning on the diving board involved in this action was a sticker placed underneath the board, which was not visible from the top of the diving board, that provided installation specifications; it did provide a warning to the effect that if the board is installed for diving into a depth of less than 7'6", then "serious injury could result to the user." A copy of that sticker is attached to this opinion as Appendix A. There are no allegations by either party that the diving board was installed without regard to existing specifications; indeed Shelton testified that "the diving board was properly matched to the type pool located in the backyard."
Ms. King produced evidence that S.R. Smith knew or should have known that diving from the diving board could be dangerous. Asked if he knew that diving from the diving board could be dangerous even before S.R. Smith started using warning labels in 1985, Shelton admitted, "I am sure S.R. Smith knew before that [that] there could be danger diving off a diving board."
S.R. Smith contends that its summary judgment was proper because, it argues, any danger from the diving board was "open and obvious." "Whether a danger [is] 'open' and 'obvious' does not go to the issue of the duty of the defendant under the AEMLD. Instead, 'open' and 'obvious' danger relates to the affirmative defense of assumption of risk, the alleged 'defectiveness' of the product, and the issue of causation."Entrekin v. Atlantic Richfield Co., 519 So.2d 447
(Ala. 1987). See Rivers v. Stihl, Inc., 434 So.2d 766
(Ala. 1983); Ford Motor Co. v. Rodgers, *Page 1288 337 So.2d 736 (Ala. 1976). S.R. Smith does not indicate whether its argument concerning 'open' and 'obvious' relates to a defense of assumption of the risk, to an argument that the product was not defective, or to an argument concerning lack of causation; in any event, however, S.R. Smith has not adequately shown to this Court the existence of a prima facie case of any of these defenses.
We conclude that Ms. King presented substantial evidence that S.R. Smith placed the diving board on the market; that when the diving board was used for its intended purpose it was either dangerous or created a danger to its user who was using it in a customary manner and for its intended purpose; that S.R. Smith knew or should have known of those dangers; and that S.R. Smith did not exercise reasonable diligence to make the dangers known to the persons likely to be injured by using the diving board. Hawkins; Gurley; Cazalas. Thus, Ms. King offered substantial evidence that created genuine issues of material fact, suitable for a jury's determination, on her claim alleging failure to warn or improper warning. Accordingly, the judgment is due to be reversed and the cause remanded. Hawkins; Gurley; Cazalas.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur. *Page 1289 
 APPENDIX A
[EDITORS' NOTE: The specification sheet IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1290